UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| THOMAS RESENDEZ,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. ED CV 16-02663-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Thomas Resendez ("Plaintiff") appeals the Commissioner's final decision denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed applications for DIB and SSI alleging disability beginning on October 30, 2010. See Administrative Record ("AR") 100, 228-36. After his applications were denied at both the initial and reconsideration levels, he requested and received a hearing before an administrative law judge ("ALJ"), who issued an unfavorable decision in April 2013 finding Plaintiff not disabled. See AR 97-109. After the decision became final, Plaintiff re-applied for DIB and SSI alleging disability beginning on October 30, 2010. See AR 228-34. His re-applications were denied both initially and upon reconsideration in 2014. See AR 114-31,134-55. Plaintiff requested another hearing, which took place on June 17, 2015. See AR 77-96. A new ALJ heard testimony from a vocational expert ("VE"), a psychological expert ("PE"), and Plaintiff, who was represented by counsel. See AR 77.

On August 4, 2015, the ALJ denied Plaintiff's re-applications. See AR 20-35. She found that there was a change in circumstance because Plaintiff alleged increased severity of his impairments since the previous ALJ's determination. See AR 23. The ALJ thus found that there was no presumption of continuing non-disability under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988). See AR 23-24.

The ALJ found that Plaintiff had the severe impairments of depression and an anxiety disorder. See AR 26. However, she found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. See id. The ALJ noted that Plaintiff had mild restrictions in activities of daily living and social functioning, moderate restrictions in maintaining concentration, persistence, or pace, and no episodes of decompensation. See AR 26-27. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all

exertional levels but with the following nonexertional limitations:

> [Plaintiff] is precluded from working around dangerous fast-moving machinery or driving automotive equipment on the job; he can perform moderately complex tasks, with [a Specific Vocational Preparation] of 3 to 4, in a habituated work setting and involving no hypervigilance; he should not be in charge of the safety of others; he can have occasional contact with supervisors and co-workers and brief, superficial contact with the public; he cannot have intense interpersonal action such as taking complaints or encounters similar to those experienced by law enforcement or emergency personnel; he requires an object-oriented environment; and he should not supervise others or be subjected to intrusive supervision.

AR 27. The ALJ found that Plaintiff could perform his past relevant work as a stores laborer and thus was not disabled. See AR 30.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-9. Plaintiff then sought review in this Court. See Dkt. 1.

## II.
## DISCUSSION

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist and improperly discounted Plaintiff's symptom testimony. See Joint Stipulation ("JS") at 2.

**A.     Discounting the Treating Psychiatrist's Opinion**

    **1.     Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c);

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

**2. Relevant Facts**

Dr. Hassan Mahfoozi began treating Plaintiff for depression and anxiety as early as September 15, 2011. See AR 313, 327. Records from nearly every visit note that Plaintiff is depressed and anxious, complies with the prescribed medications for depression and anxiety, and is "[t]olerating medication well without side effects or allergy." See, e.g., AR 313-16, 318-22, 324, 326, 329-31, 335, 337. The only exception was on January 23, 2014, when Dr. Mahfoozi checked boxes next to both "compliant" and "non-compliant" with treatment plan without further explanation. AR 354.

Dr. Mahfoozi completed two medical source statements regarding

4

Plaintiff's ability to do work-related activities. The topics included Plaintiff's ability to carry out instructions, maintain concentration, interact appropriately with coworkers and the public, set realistic goals, and maintain social functioning. See AR 356-59. He checked boxes for the most severe limitations—where Plaintiff's disorders preclude performance for more than 15% of each activity of an eight-hour workday—for 15 of the 20 categories, and checked boxes for the second-most severe limitations—indicating that Plaintiff's disorders precluded performance for 10% of an eight-hour workday—for the remaining 5 categories. See id. Without using the checkboxes provided regarding the amount of time that Plaintiff would be absent from work, Dr. Mahfoozi wrote that "[h]e is unable to work." AR 359. He noted Plaintiff's depression and anxiety, the lack of side effects from medication, and Plaintiff's ability to sit for 45 minutes at a time and stand for 30 minutes at a time. See AR 373-76.

The ALJ gave "little weight" to Dr. Mahfoozi's assessment of Plaintiff's limitations because his treatment records reflected conservative treatment consisting primarily of medication management, which Plaintiff tolerated without side effects. AR 29. The ALJ gave no weight to Dr. Mahfoozi's conclusion that Plaintiff was unable to work due to his mental impairments because it was an opinion on an issue reserved to the Commissioner. See id. The ALJ gave little weight to Dr. Mahfoozi's global assessment of functioning ("GAF") score of 49 due to the conservative nature of Plaintiff's treatment and because GAF scores are subjectively assessed, reveal only snapshots of impaired behavior, and do not address function-by-function capacity or limitations. See id.

The ALJ also considered the opinions of two non-examining state-agency psychological consultants. She gave "little weight" to one non-examining physician's opinion that Plaintiff's mental impairment was non-

severe because that physician did not have the opportunity to consider the most recent treatment records. See AR 29. The ALJ assigned "some weight" to a second non-examining physician's opinion that adopted the RFC from the ALJ's prior decision, noting that this second non-examining physician did not have Dr. Mahfoozi's more recent treatment records that supported additional limitations. See id.

### 3. Analysis

As an initial matter, Dr. Mahfoozi's broad conclusion that Plaintiff was precluded from all work is an opinion on an issue that is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527 (d)(1)-(2), 416.927(d)(1)-(2); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). As such, this portion of Dr. Mahfoozi's opinion was not binding on the ALJ. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." (citation omitted)).

As noted above, the ALJ discounted Dr. Mahfoozi's GAF score of 49 because GAF scores are subjectively assessed, provide only snapshots of a claimant's behavior, and do not address functional capacity or limitations.[2] These are specific and legitimate reasons for discounting GAF scores. See Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) (finding that the unreliability of GAF scores is a specific and legitimate reason to reject the

---

[2] Clinicians use a GAF score to indicate an individual's overall level of functioning. A GAF score of 41-50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 598 n.1 (9th Cir. 1999).

6

scores).

The ALJ documented a conflict between Dr. Mahfoozi's conservative treatment records and the severe functional limitations listed in his medical source statement. As the ALJ noted, Plaintiff visited Dr. Mahfoozi for only medication management. See AR 29. During those examinations, Dr. Mahfoozi did not generally record objective findings that suggested significant impairments in concentration, thought process and content, dangerousness, or motor difficulties. See, e.g., AR 316, 327, 347. Moreover, he repeatedly noted that Plaintiff was compliant with medication and could tolerate his medication without any side effects. See, e.g., AR 313-16, 318-22, 324, 326, 329-31, 335, 337. Yet his medical source statement noted maximum limitations for the vast majority of work-related activities. See AR 369-70. Dr. Mahfoozi's mild clinical findings fail to support his opinion that Plaintiff was so disabled that he would be fully incapable of working and severely limited in all work categories. Such a conflict constitutes a specific and legitimate reason for rejecting his opinion. See Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (finding contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (finding ALJ properly rejected treating physician's opinion where treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [plaintiff]"); see also Garrison, 759 F.3d at 1012.

Although Plaintiff argues that "it is unclear from the record what other types of treatment would be appropriate for a psychiatrist to prescribe" beyond medication management, JS at 4, Dr. Mahfoozi's own forms suggest referrals for lab work to test hormone levels or psychotherapy. See, e.g., AR 318-19, 327. Yet only once in over 24 sessions did Dr. Mahfoozi suggest individual psychotherapy for Plaintiff. See AR 351. Moreover, nothing in the record

shows that Plaintiff attended any such psychotherapy, suggesting that he, too, found his disorders non-debilitating when treated with medication. Plaintiff argues that the ALJ fully rejected Dr. Mahfoozi's findings despite the fact that she found that Dr. Mahfoozi's progress notes detail significant mental health limitations. See JS at 4. Such an argument is meritless. The ALJ credited Dr. Mahfoozi's clinical findings and incorporated many of them into Plaintiff's RFC. See AR 27. The ALJ discredited only his more extreme opinions about Plaintiff's functional limitations. And while Plaintiff claims that the ALJ "failed to provide any other reason to dismiss Dr. Mahfoozi's opinion," JS at 5, the ALJ specified that she discredited aspects of Dr. Mahfoozi's opinions because (1) he opined on issues reserved for the Commissioner, (2) GAF scores are subjectively assessed and are of limited evidentiary value, and (3) his conservative treatment records were inconsistent with his opinions of debilitating mental health limitations. See AR 29.

The ALJ's reasons for giving the treating psychiatrist's opinion little weight were specific and legitimate. Moreover, Dr. Mahfoozi's check-box opinions about Plaintiff's functional limitations were "brief, conclusory, and inadequately supported by clinical findings"; as such, the ALJ had the discretion to give them little weight. See Thomas, 278 F.3d at 957 (finding that ALJ need not accept treating physician's opinion that is "inadequately supported by clinical findings"). Remand is not warranted on this ground.

**B.     Discounting Plaintiff's Testimony**

Plaintiff argues that the ALJ improperly discredited his testimony as to his symptoms and functional limitations. See JS at 10.

**1.     Applicable Law**

In order to determine whether a plaintiff's testimony about subjective symptoms is credible, an ALJ must engage in a specific two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v.

8

Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or other symptoms. See Lingenfelter, 504 F.3d at 1036.

If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown–Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, unexplained or inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d at 1283-84, 1284 n.8. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

### 2. Relevant Facts

Plaintiff testified that he was unable to work due to anxiety, forgetfulness, and difficulty concentrating, following instructions, and completing tasks. See, e.g., AR 83-84, 86-88, 92. He also asserted that while his medications helped with his symptoms, they made him drowsy. See AR 84-86. Plaintiff testified that he no longer drove much and that his daughter, who lived nearby, usually drove him wherever he had to go. See AR 86. His disability reports and function reports were generally consistent with his

9

testimony. See, e.g., AR 254-67 (Plaintiff's self-reported function report), 268-76 (third party function report), 281-82 (disability report), 283-87 (disability report appeal).

The ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of these symptoms were not fully credible because they were not supported by the objective medical evidence. See AR 28. The ALJ also noted that "[c]ontrary to [Plaintiff's] allegations of medication-induced fatigue, Dr. Mahfoozi's records do not document any medication side effects." AR 29.

### 3. Analysis

The ALJ offered at least two specific, clear and convincing reasons for discrediting Plaintiff's symptom testimony.

First, Plaintiff's allegations regarding medication side effects conflicted with the medical record. See AR 28. At his hearing, Plaintiff noted that his medication helped him "function on a daily basis without having . . . anger issues . . . but they make me real tired, real drowsy." AR 86. In describing his typical day, Plaintiff said he would wake up, take his medication, eat breakfast, then "I'll start feeling a little tired so I'll watch some TV, and then I'll lay down and I'll take a nap, maybe two or three hours, and then I'll get back up." AR 91. He stated that if he spent the day around too many people, "I start getting a little bit of anxiety, so I start to take my pills, so I'll start getting tired" such that he would need to go back home. AR 92. In contrast, Dr. Mahfoozi noted on at least 31 separate occasions that Plaintiff had no negative side effects from his medication. The ALJ validly considered that Plaintiff discussed during the hearing a side effect that he did not mention once to his psychiatrist over the course of 31 appointments and several years. It was appropriate to consider Plaintiff's inconsistent statements regarding medication side effects when making her credibility findings, as Plaintiff's failure to tell his physicians about

10

those side effects undermines his complaints.

Second, the ALJ considered the objective medical evidence in assessing Plaintiff's credibility. See AR 29. Plaintiff set forth many symptoms and included records and an opinion from Dr. Mahfoozi that allegedly supported his subjective symptom testimony. See JS at 10. But the record shows that the ALJ thoroughly considered the objective medical evidence from Dr. Mahfoozi in concluding that Plaintiff's subjective symptom testimony was not credible. See AR 28-29; see also supra Section II.A. In considering the objective record and explaining why she had discounted the opinion findings of Dr. Mahfoozi, the ALJ gave clear and convincing reasons supported by substantial evidence when she concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. Just as with Dr. Mahfoozi's opinions regarding the effect of Plaintiff's limitations, Plaintiff's testimony cannot be easily reconciled with his psychiatrist's conservative treatment over many years. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that ALJ permissibly discredited claimant's subjective complaints where objective evidence did not corroborate severity of alleged symptoms).

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. See Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959 (9th Cir. 2002); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). As both the inconsistent testimony and objective medical

11

evidence affected Plaintiff's credibility, they constitute clear and convincing reasons for discounting Plaintiff's testimony regarding his symptoms and functionality. Reversal is therefore not warranted on this basis.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: March 20, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge